# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULISSA COTA, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>THINGS REMEMBERED, INC., a Delaware corporation; and DOES 1 to 10, inclusive,<br><br>         Defendant. | Case No.: 20cv1939-GPC(BGS)<br><br>**ORDER GRANTING PLAINTIFF'S AMENDED MOTION FOR DEFAULT JUDGMENT; GRANTING REQUEST FOR PERMANENT INJUNCTION AND STATUTORY DAMAGES AND GRANTS IN PART AND DENIES IN PART PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS**<br><br>**[Dkt. No. 12.]** |

  Before the Court is Plaintiff's amended motion for default judgment against Defendant. (Dkt. No. 12.) No opposition was filed. Based on the reasoning below, the Court GRANTS Plaintiff's motion for default judgment, GRANTS Plaintiff's request for injunctive relief and statutory damages and GRANTS in part and DENIES in part Plaintiff's request for attorney's fees and costs.

## BACKGROUND

  Plaintiff Julissa Cota ("Plaintiff") filed a putative class action complaint alleging violations of the Americans with Disabilities Act ("ADA") and the Unruh Civil Rights

Act ("Unruh Act") on September 30, 2020.  (Dkt. No. 1, Compl.)  Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content while using her computer.  (*Id.* ¶¶ 1, 4.)  Defendant Things Remembered Inc. ("Defendant") owns, operates and controls https://www.thingsremembered.com/ (the "website"), which provides consumers access to engraved and personalized goods, contact information, personalization services, and information about Defendant's physical stores.  (*Id.* ¶¶ 5, 24.)  Plaintiff alleges that Defendant's website is incompatible with screen-reading software and thus denies Plaintiff equal access to Defendant's services.  (*Id*. ¶¶ 25, 31.)  Plaintiff has visited Defendant's website numerous times and has encountered barriers preventing her from using the website, including a lack of alternative text and redundant links which result in additional navigation.  (*Id*. ¶ 28.)

On June 24, 2021, Plaintiff filed a request for entry of default which was entered on June 25, 2021.  (Dkt. Nos. 4, 50.)  On August 2, 2021, Plaintiff filed a motion for entry of default judgment against Defendant.  (Dkt. No. 7.)  Because Plaintiff failed to file a certificate of service of its motion for default judgment despite two requests by the Court, the motion was rejected on discrepancy on October 13, 2021.  (Dkt. No. 10.)

On May 24, 2022,  Plaintiff filed an amended motion for default judgment which was served on Defendant.[1]  (Dkt. No. 12.)  Defendant did not file an opposition.

## Discussion

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.  A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citation omitted).

/ / /

---

[1] While Plaintiff filed the complaint as a class action, she only seeks relief as to herself individually.

### A. Subject Matter Jurisdiction

Plaintiff asserts that the Court has subject matter jurisdiction over the federal ADA and state Unruh Civil Rights Act causes of action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d)(2), and over the ADA claim under federal question jurisdiction, 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Plaintiff has sufficiently alleged the Court's subject matter jurisdiction over the case.

### B. Personal Jurisdiction

The Complaint alleges that the Court has personal jurisdiction over Defendant because it conducts business in California and a substantial part of the acts or omissions occurred in San Diego County, California, and because Defendant's offending website is available across California. (Dkt. No. 1, Compl. ¶¶ 10, 12.)

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted). "California's long-arm statute . . . is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." *Id.* As such, the Court need only consider the requirements of due process which requires that nonresident defendants have "minimum contact" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction can be either "general" or "specific." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

A court may assert general jurisdiction over defendants who are not domiciled in the forum state "only when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). As to corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for

general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted). In this case, Defendant, being incorporated and having its principal place of business outside of California, is not "at home" in California. Therefore, Defendant is not subject to the Court's general personal jurisdiction.

Next, specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n. 8. The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The Ninth Circuit conducts a three-prong test to determine whether a non-resident defendant is subject to specific personal jurisdiction,

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–478 (1985)). "For claims sounding in contract, a purposeful availment test is used; for claims sounding in tort; a purposeful direction test is used." *In re Boon Glob. Ltd.*, 923 F.3d 643, 651 (9th Cir. 2019). Because ADA claims sound in tort, the purposeful direction test applies. *See Bradley v. T-Mobile US, Inc.*, No. 17-cv-07232-BLF, 2020 WL 1233924, at *13 (N.D. Cal. Mar. 13,

2020) (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 474 (9th Cir. 1995) (noting that because claims of discrimination are "more akin to tort claims," the court employed the purposeful direction framework); *see e.g., Brooks v. Y.Y.G.M. SA*, No. 2:21-cv-00078-JAM-CKD, 2021 WL 5450232, at *3 (E.D. Cal. Nov. 22, 2021) (parties to ADA claim agree purposeful direction test applies).

### 1. Purposeful Direction

To establish purposeful direction, a plaintiff must show that a defendant satisfies the *Calder* test. Under the three-part *Calder* "effects" test, Plaintiff must establish that the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones,* 465 U.S. 783 (1984)).

#### a. Intentional Act

First, an intentional act for purposes of the *Calder* effects test is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Wash. Shoe Co. v. A–Z Sporting Goods*, *Inc.*, 704 F.3d 668, 674 (9th Cir. 2012); *Schwarzenegger,* 374 F.3d at 806 (an intentional act "refers" to an intent to perform an actual, physical act in the real world.").

Plaintiff alleges that Defendant conducts a substantial amount of business of selling engraved and personalized gift items through its physical stores in California and its website, which is directed to California consumers. (Dkt. No. 1, Compl. ¶¶ 5, 10.) Because the Court must take the allegations in the Complaint as true for purposes of a motion for default judgment, *see* Fed. R. Civ. P. 8(b)(6), Plaintiff has shown that Defendant has engaged in the intentional act of conducting business by selling its products in California.

#### b. Expressly Aimed

Next, as to "expressly aimed", the Court must focus on the "defendant's 'own contacts' with the forum, not . . . the defendant's knowledge of a plaintiff's connections to

a forum." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (quoting *Walden*, 134 S. Ct. at 1124-25). "Two principles animate the 'defendant-focused' inquiry." *Id.* at 1068 (citing *Walden*, 134 S. Ct. at 1122). "First, the relationship between the nonresident defendant, the forum, and the litigation 'must arise out of contacts that the 'defendant himself' creates with the forum State.'" *Id.* "Second, the minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Id.* "It follows that 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Id.*

As to Internet conduct, the Ninth Circuit has adopted a sliding scale in determining whether operating a website gives rise to sufficient minimum contacts within the forum state. *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419 (9th Cir. 1997) ("the common thread . . . is that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'") (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). At one end of the scale are passive websites, those that merely display information or advertisements, and do not support the exercise of specific personal jurisdiction. *See Zippo Mfg. Co.*, 952 F. Supp. at 1124; *see also Cybersell*, 130 F.3d at 418 ("[N]o court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state. Rather, in each, there has been 'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state" (citations omitted)). At the other end of the scale are "interactive" websites where "the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *Zippo Mfg. Co.,* 952 F. Supp. at 1124. "The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the

exchange of information that occurs on the Web site." *Id; see j2 Cloud Servs., Inc. v. Fax87*, No. 13-05353 DDP (AJWX), 2017 WL 1535083, at *6 (C.D. Cal. Apr. 27, 2017) (quoting *American Auto. Ass'n, Inc. v. Darba Enterprises Inc.*, No. C 09-510 SI, 2009 WL 1066506, *4 (N.D. Cal. Apr. 21, 2009) ("Where a website is somewhere between the two extremes, the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet.").

In her motion, Plaintiff argues that the Court may exercise personal jurisdiction over Defendant because it has physical stores in California, where consumers can purchase items, and a website, which allows goods and services from its stores to be purchased online. (Dkt. No. 12 at 17-18.) Further, Plaintiff, relying on *Zippo Mfg. Co.*, contends that Defendant's website is highly interactive because it posts its products on its website and the website allows customer to order online. (*Id.* at 19.)

The complaint alleges that Defendant, a nonresident corporation, is subject to the personal jurisdiction of the Court because "a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in the Southern District of California." (Dkt. No. 1, Compl. ¶ 10.) Plaintiff asserts that Defendant owns, operates, and maintains brick and mortar store locations in California, and that Plaintiff has been denied the full and equal use and enjoyment of the facilities, goods, and services of Defendant's associated website in San Diego County. (*Id.*) Plaintiff further alleges Defendant's website, by not having screen-reading software, is inaccessible to Plaintiff, who is legally-blind which has impeded Plaintiff's full and equal enjoyment of goods and services offered at Defendant's physical locations because she is unable to find the location and hours of operation of Defendant's locations on its website. (*Id.* ¶ 32.) Plaintiff alleges that Defendant conducts a substantial amount of business of selling engraved and personalized gift items through its physical stores in California and its website, which is available to California consumers. (*Id.* ¶¶ 5, 10.)

The Court concludes that Plaintiff has shown that Defendant, by operating a highly interactive website, where California consumers can peruse, purchase items and locate physical stores, has expressly aimed its activities in this forum. *See Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal.1999) (defendant's website highly commercial because it provides information about the company, customer service, and technical support and a substantial portion of the site is dedicated to allowing the consumer to purchase the defendant's products; therefore, asserting personal jurisdiction comports with due process).

### c. Causing Harm

"Harm suffered in the forum state is a necessary element in establishing purposeful direction." *Morrill v. Scott Fin. Corp,* 873 F.3d 1136, 1144 (9th Cir. 2017). Here, Plaintiff shown Defendant caused harm that it knew would likely be suffered in California because Defendant expressly aimed its conduct at California and has not implemented screen-reading software to allow Plaintiff, a visually impaired individual, to read content on the website. Thus, Defendant caused Plaintiff harm by denying her equal access to Defendant's products and services.

### 2. Claims Arise Out of or Relate to Defendant's Forum-Based Activities

The second prong of specific jurisdiction requires that a plaintiff's claims arise out of or relate to a defendant's forum-based activities. *Schwarzenegger,* 374 F.3d at 802. Plaintiff satisfies this requirement because her claims arise out of Defendant's sale of items on its website and denies Plaintiff equal access to its products in this district.

### 3. Exercise of Jurisdiction Must Be Fair and Reasonable

The third prong requires assessing whether the exercise of personal jurisdiction is reasonable and fair and the burden is on the defendant to demonstrate a compelling case that exercise of jurisdiction would not be reasonable. *See Schwarzenegger*, 374 F.3d at 802. In this case, because Defendant is in default and has not responded to the motion for default judgment and has not argued the exercise of personal jurisdiction is unreasonable, the Court concludes that the exercise of personal jurisdiction over Defendant is

reasonable. *See Adobe Sys. Inc. v. Nwubah*, Case No. 18-CV-06063-LHK, 2020 WL 3432639, at *9 (N.D. Cal. June 23, 2020) (exercise of personal jurisdiction reasonable where defaulting defendant did not respond).  In sum, Plaintiff has shown that Defendant is subject to the Court's specific personal jurisdiction.

Because the Court has subject matter jurisdiction over the case and specific personal jurisdiction over Defendant, the Court now addresses the merits of the motion for default judgment

## C.    Motion for Default Judgment

Federal Rule of Civil Procedure ("Rule") 55 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Here, Plaintiff filed a request for entry of default and default was entered on June 25, 2021.  (Dkt. Nos. 4, 5.)  Pursuant to Rule 55(b)[2], Plaintiff has now filed an amended motion for default judgment.  (Dkt. No. 12.)

The Ninth Circuit looks to seven factors to assist the court in determining whether default judgment is appropriate.  The seven factors are:

> (1) the possibility of prejudice to the plaintiff;
> (2) the merits of the plaintiff's substantive claim;
> (3) the sufficiency of the complaint;
> (4) the sum of money at stake in the action;
> (5) the possibility of a dispute concerning material facts;
> (6) whether the default was due to excusable neglect; and;
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Upon default, the factual allegations in the complaint are taken as true, except those related to the amount of damages.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see* Fed. R.

---

[2] Rule 55(b)(2) provides that "the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).

Civ. P. 8(b)(6). The decision to grant or deny default judgment is within the discretion of the district court. *Eitel,* 782 F.2d at 1471.

### 1. Prejudice to the Plaintiff

Under the first *Eitel* factor, the Court must examine whether Plaintiff will be prejudiced if the Court denies default judgment. *See Eitel*, 782 F.2d at 1471. Since default judgment is the only means to compensate Plaintiff, by injunction and damages, denial of her request for default judgment will effectively immunize Defendant from liability and leave Plaintiff without redress. *See Amini Innovation Corp. v. KITY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) (finding prejudice to plaintiff where "a default judgment is the only means available for compensating [p]laintiff for [d]efendants' violations"); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1081 (C.D. Cal. 2012) (same). Plaintiff contends that there is a sizable possibility of ongoing prejudice if default is not entered, as she has been and continues to be discriminated against by Defendant. (Dkt. No. 12 at 11.) Because failure to enter default judgment for Plaintiff would be prejudicial, this factor weighs in favor of default judgment.

### 2. Merits and Sufficiency of the Complaint

Under the second and third factors, the Court must examine the merits of the plaintiff's substantive claim and the sufficiency of the complaint. *See Eitel,* 782 F.2d at 1471. These factors "require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" *Pepsico, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (suggesting that the issue is whether the allegations in the complaint state a claim upon which plaintiff can recover)). In this case, Plaintiff alleges violations of the ADA, 42 U.S.C. § 12101, *et seq.;* and the Unruh Act, California Civil Code § 51, *et seq.* (Dkt. No. 1, Compl.)

#### a. ADA

Congress passed the ADA in 1990 "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42

U.S.C. § 12101(b)(2). Title III of the ADA prohibits discrimination by public accommodations. 42 U.S.C. § 12182(a). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)).

"On their own, websites are not places of public accommodation" under the ADA. *Mason v. Aldea Design, Inc.*, Case No.: 2:21-cv-07823-SB-PVC, 2022 WL 2189615, at *3 (C.D. Cal. Jan. 6, 2022) (quoting *Langer v. Pep Boys Manny Moe & Jack of Cal.*, No. 20-cv-06015-DMR, 2021 WL 148237, at * 5 (N.D. Cal. Jan. 15, 2021) (citing *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1114 (9th Cir. 2000) (holding that the ADA covers "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services")). In 2019, the Ninth Circuit addressed ADA accessibility claims of websites by a plaintiff with visual impairments in *Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 122 (2019). The Ninth Circuit held that "the ADA mandates that places of public accommodation . . . provide auxiliary aids and services to make visual materials available to individuals who are blind" which also applies to the defendant's website and app. *Id.* at 905. In *Robles*, the inaccessibility of Domino's website and app impeded access to the goods and services of its physical pizza franchise, where the customers use the website and app to locate a nearby Domino's restaurant and order pizzas for at-home delivery or in-store pickup. *Id.* The Court noted that the nexus between Domino's website and app, and physical restaurant was critical "[b]ecause the ADA only covers 'actual, physical places where goods or services are open to the public, and places where the public gets those goods or services." *Id.*

On the first element, Plaintiff has pleaded that she is legally blind and requires the assistance of screen-reading software to experience the internet and is disabled as defined

under the ADA, (Dkt. No. 1, Compl. ¶¶ 1, 4). *See* 42 U.S.C. § 12102(1) & (2) (disability is defined as "[a] physical or mental impairment that substantially limits one or more major life activities" and include seeing and reading).

On the second factor, Plaintiff alleges that Defendant's physical stores are places of public accommodation. (Dkt. No. 1, Compl. ¶¶ 5, 7 (citing 42 U.S.C. § 12181(7).) Plaintiff also claims that the access barriers she encountered on Defendant's website denied her full and equal access to the goods, facilities, and services made available on the website, and that the same barriers deterred Plaintiff from visiting the physical stores because of her inability to find the stores' location or operating hours. (Dkt. No. 1, Compl. ¶¶ 27, 32.) Plaintiff alleges that she encountered access barriers on Defendant's website and denied full and equal enjoyment of goods and services offered at Defendant's physical locations because the stores and website are integrated. (*Id.* ¶¶ 10, 14.) The website offers features which should allow all consumers to access the goods and services which Defendant offers in connection with its physical locations. (*Id.* ¶ 24.) Taking the allegations of nexus between Defendant's website and physical store as true, Plaintiff has demonstrated the extension of the ADA's application to Defendant's website and Plaintiff's claims. *See Haggar v. Ashley Furniture Indus., Inc.*, No. LA CV 19-01266-PA (Jcx), 2019 WL 8886026, at *3 (C.D. Cal. Dec. 12, 2019) (alleging that the plaintiffs tried to use the defendant's website "to locate physical stores, and order furniture and other products available at [d]efendant's physical locations" was sufficient to show nexus); *Farr v. Hobby Lobby Stores, Inc.*, No. CV 19-5949-DMG (ASx), 2020 WL 3978078, at *3 (C.D. Cal. Apr. 29, 2020) (denying motion to dismiss where the plaintiff alleged that the defendant's web-based barriers rendered him "unable to locate information about store locations and hours").

Third, Plaintiff specifically alleges that she faced, as examples, the following disability-related access barriers on Defendant's website: 1) a lack of alternative text or text equivalent which prevents screen-readers from accurately vocalizing image or graphic descriptions; 2) empty links that do not contain clickable links and prevent

visually impaired users from accessing content and cause them confusion; and 3) redundant links on Defendant's website result in additional navigation and repetition for keyboard and screen-reader users.  (Dkt. No. 1, Compl. ¶ 28.)

Thus, Plaintiff has sufficiently alleged a violation of the ADA and satisfied the second and third factors under *Eitel*.

### b.   The Unruh Act

The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability, medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act.  Cal. Civ. Code, § 51(f).  Therefore, because Plaintiff has alleged a claim for violations of the ADA, she has also alleged a claim for violations of the Unruh Act and satisfied the second and third factors of *Eitel*.

### 3.   Sum of Money at Stake

The Court next examines the amount at stake in relation to the seriousness of Defendant's conduct.  *See Eitel,* 782 F.2d at 1471-72; *Wecosign, Inc.*, 845 F. Supp. 2d at 1082.  Plaintiff alleges violations of the ADA, 42 U.S.C. § 12101, *et seq.* and the Unruh Act, California Civil Code § 51, *et seq.*  (Dkt. No. 1, Compl.)  Plaintiff seeks $13,020.00 in damages and attorney's fees and costs which she claims is not a large amount and reasonable for similar ADA cases.  (Dkt. No. 12 at 14.)

"Default judgement is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct."  *Vogel v. Rite Aid Corp.,* 992 F. Supp. 2d at 1012 (C.D. Cal. 2014) *abrogated on other grounds by Lopez v. Catalina Channel Express, Inc.,* 974 F.3d 1030, 1035 n.3 (9th Cir. 2020).  However, the $13,020 amount requested here is similar to amounts requested that have been found reasonable in similar ADA cases.  *See id.* (finding $13,739.20 was reasonable and citing other cases where

$10,119.70 and $12,000.00 were also reasonable in motions for default judgment in ADA cases).

### 4. Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts of the case. *See Eitel,* 782 F.2d at 1471-72. "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Wecosign, Inc,* 845 F. Supp. 2d at 1082. To date, Defendant has not responded to the complaint or any of Plaintiff's filings. As Defendant has not appeared to contest this matter, this factor favors entry of default judgment.

### 5. Whether the Default was Due to Excusable Neglect

The sixth *Eitel* factor examines whether Defendant's failure to respond can be attributed to excusable neglect. *See Eitel*, 782 F.2d at 1472. This factor weighs in favor of entry of default judgment where the defendants were properly served. *Landstar Ranger, Inc. v. Parth Enters., Inc*., 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010). Plaintiff has served Defendant with the complaint, summons, and amended motion for default judgment. (Dkt. Nos. 3, 12.) Therefore, Defendant's failure to appear and litigate this matter, therefore, is not likely based on excusable neglect. This factor weighs in favor of default judgment.

### 6. The Policy of Decisions on the Merits

The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment. *See Eitel,* 782 F.2d at 1472. Generally, default judgments are disfavored, and a case should be decided on the merits when possible. *Pena v. Seguros La Comercial, S.A*., 770 F.2d 811, 814 (9th Cir. 1985). However, where a defendant's failure to appear "makes a decision on the merits impracticable, if not impossible," entry of default judgment is warranted. *Pepsico, Inc*., 238 F. Supp. 2d at 1177. Because Defendant has failed to appear or respond in this matter, a decision on the merits is impossible. Accordingly, the Court is not precluded from entering default judgment against Defendant.

In assessing all the factors, the Court concludes that the *Eitel* factors weigh in favor of default judgment for violations of the ADA and Unruh Civil Rights Act.

### D.     Damages

Upon default, the factual allegations in the complaint are taken as true, except those related to the amount of damages. *Geddes,* 559 F.2d at 560*; see* Fed. R. Civ. P. 8(b)(6).  Allegations of damages must be proven. *See Geddes*, 559 F.2d at 560.  "The plaintiff is required to provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." *Amini Innovation Corp.,* 768 F. Supp. 2d at 1054 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D.  494, 498 (C.D. Cal. 2003)).  When "proving-up" damages, Plaintiff may submit declarations. *Philip Morris USA, Inc*., 219 F.R.D. at 498.  "Plaintiff's burden in 'proving up' damages is relatively lenient." *Id.*  Once default is entered, it is within the province of the court's power to use evidence or facts from the record to fix the amount which the plaintiff is lawfully entitled to recover and give judgment accordingly. *Pope v. United States*, 323 U.S. 1, 11-12 (1944).

Here, Plaintiff seeks injunctive relief pursuant to the ADA and Unruh Act, and statutory damages pursuant to the Unruh Act.

### 1.     Injunctive Relief

In her request for injunctive relief, Plaintiff ask the Court to require Defendant to modify its website to conform with the Web Content Accessibility Guidelines ("WCAG").[3]  (Dkt. No. 12 at 20.)  Specifically, Plaintiff seeks an order requiring Defendant to "modify the website to achieve substantial conformance with WCAG 2.1

---

[3] WCAG are "private industry standards for website accessibility developed by technology and accessibility experts." *Robles*, 913 F.3d at 902 n. 1; *see also* Web Accessibility Initiative, Web Content Accessibility Guidelines (WCAG) Overview, https://www.w3.org/WAI/standards-guidelines/wcag (last visited July 25, 2022). WCAG "have been widely adopted, including by federal agencies, which conform their public-facing electronic content to" WCAG standards. *Id.*

Level AA[4] within twenty-four (24) months of the Court's order entering judgment on Defendant" and requiring Defendant to "adopt and implement a website accessibility policy" within one hundred eighty (180) days of the Court's order. (*Id.*)

In order to obtain a permanent injunction, a plaintiff must demonstrate the following four factors:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Where a statute authorizes a permanent injunction, the court need not necessarily consider the four factors to support a permanent injunction. *See EEOC v. BNSF Railway Co.*, 928 F.3d 916, 928 (9th Cir. 2018) (noting that district court did not consider four factor permanent injunction factors because the ADA authorizes any person who proves an ADA violation to seek the remedies provided for in Title VII, and recognizing that the Ninth Circuit and the Supreme Court have granted permanent injunctions in the Title VII context without analyzing the four-factor test).

Here, because Title III of the ADA only provides for injunctive relief and not monetary damages, *see* 42 U.S.C. 12188(a)(2) ("injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief

---

[4] "WCAG 2.1 is the most recent version of the guidelines." *Alcazar v. Bubba Gump Shrimp Co. Restaurants, Inc.*, Case No. 20-cv-02771-DMR, 2020 WL 4601364, at *3 (N.D. Cal. Aug. 11, 2020). "There are three levels of Success Criteria ('A', 'AA', and 'AAA') that measure varying levels of conformance to the WCAG standards." *Payan v. Los Angeles Community College Dist*. Case No. 2:17-cv-01697-SVW-SK, 2020 WL 5289845, at *2 n.1 (C.D. Cal. May 29, 2020). "Level A is the minimum level. Level AA includes all Level A and AA requirements. Many organizations strive to meet Level AA. Level AAA includes all Level A, AA, and AAA requirements." https://www.w3.org/WAI/WCAG2AA-Conformance (last visited July 25, 2022).

shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter"), and defendant has not responded to the motion, the Court declines to address the four factors to support a permanent injunction.[5] Because Plaintiff has demonstrated a violation of Title III of the ADA, and Defendant has not responded, a permanent injunction is warranted and the injunctive relief sought by Plaintiff is appropriate. *See Robles*, 913 F.3d at 907 ("district court[s] can order compliance with WCAG 2.0 as an equitable remedy.").

### 2. Unruh Act Statutory Damages

Plaintiff seeks statutory damages in the amount of $4,000.00 as provided under the Unruh Act. (Dkt. No. 12 at 21.) The Unruh Act provides that a plaintiff is entitled to recover $4,000.00 for each occasion on which she was denied equal access. Cal. Civ. Code § 52(a). Here, Plaintiff has asserted she was denied access to services of a place of public accommodation due to Defendant's website's incompatibility with screen readers. (Dkt. No. 12 at 21.) Therefore, an award of $4,000.00 in statutory damages is appropriate.

### 3. Attorney's Fees and Costs

Plaintiff next requests attorneys' fees and costs in the amount of $9,020.00 under the ADA and Unruh Act. (Dkt. No. 12 at 21.) Under both the ADA and the Unruh Act, a prevailing plaintiff is entitled to an award of reasonable attorney's fees and costs. *See* 42 U.S.C. § 12205; Cal. Civ. Code § 52(a).

Reasonableness of attorney's fees are based on the "lodestar" calculation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Id.* Once calculated, the lodestar amount is presumptively the

---

[5] The Court notes that Plaintiff has also failed to articulate and address the four factors to support a permanent injunction.

reasonable fee amount. *Van Gerwen v. Guarantee Mut. Life Ins*., 214 F.3d 1041, 1045 (9th Cir. 2000). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley,* 461 U.S. at 433.

To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. *Blum v. Stenson*, 465 U.S. 886, 896 n.1 (1984). Courts look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the "forum in which the district sits." *Id*. The moving party has the burden to produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cnty*., 815 F.2d 1258, 1263 (9th Cir. 1987). Affidavits by the plaintiff's counsel and other counsel concerning the prevailing fees in the community, and rate determination in other cases, are satisfactory evidence of the prevailing market rate. *United Steelworkers of America v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990).

Here, Plaintiff has failed to bear her burden to produce evidence concerning the prevailing rates for similar services by attorneys in this district. Therefore, the Court DENIES the request for attorney's fees.

Plaintiff also seeks to recover $405.00 for the filing fee, $3,500.00 for Expert Consulting Fee, and $550.00 for obtaining the expert report for a total of $4,455.00 in costs. The Court is aware that the filing fee in this Court is $405.00 and is reasonable. However, Plaintiff has not attached an invoice related to the $3,500.00 Expert Consulting Fee and related expert report and the $550.00 to obtain the expert report.[6] Because these fees are not supported by documentation, the Court DENIES the Expert Consulting Fee

---

[6] It is unclear to the Court what the "obtain expert report" fee is.

and Fee to obtain the expert report. Thus, the Court GRANTS Plaintiff $405 in costs and DENIES Plaintiff $4,050.00 in costs.

## Conclusion

Based on the above, the Court GRANTS Plaintiff's motion for default judgment on the ADA and Unruh Civil Rights Act causes of action. The Court GRANTS Plaintiff's request for a permanent injunction and orders that Defendant "modify the website to achieve substantial conformance with WCAG 2.1 Level AA within twenty-four (24) months" of the entry of judgment and to "adopt and implement a website accessibility policy" that ensures that any changes or additions to the website will substantially conform with WCAG 2.1 within one hundred eighty (180) days of the entry of judgment.

The Court also GRANTS Plaintiff's request for statutory damages of $4,000 and DENIES the request for attorney's fees. The Court further GRANTS Plaintiff's request for costs in the amount of $405.00 and DENIES the remainder of costs related to expert reports as unsupported. The hearing date set for July 29, 2022 shall be **vacated**.

IT IS SO ORDERED.

Dated: July 26, 2022

Hon. Gonzalo P. Curiel
United States District Judge